Good afternoon. Good afternoon. I'm Jonathan Grossman for the appellant petitioner Misael Quintana and I'd like to focus our discussion on trial counsel being ineffective for failing to interview and prepare or present recipient witnesses who were lived with Mr. Quintana and could have testified that the alleged actions did not occur. He did not have the character for doing this. And for failing to retain an expert who would have been able to explain to the jury that Mr. Quintana lacked the character to commit these offenses. So this is a habeas proceeding in the land of the Anti-Terrorism Effective Death Penalty Act, right? Correct. And our standard review is pretty tough, right? Correct. But it's not insurmountable. So you have an IAC claim to start with, right? Right. Double deference. I understand that. All right. Now, trial counsel has names of six people who said, and our client says, talk to these people, they'll tell you I didn't do this. Trial counsel never talks to them. I don't think... Were they character witnesses or recipient witnesses? They were both. Well, how could they be recipient witnesses? Well, they're not recipient witnesses in that they were with them 24 hours a day. Right. So they couldn't say I was there at the time of this alleged occasion and it didn't occur. They weren't alibi witnesses. They were not alibi witnesses, but they were witnesses who said I was there when I saw them with his daughter. She did not seem at all afraid or distressed. They seemed to have a normal father-child relationship. She didn't seem to have any problems with him. He didn't have any problems with her. It was a normal parent-child relationship. I would trust my children with him. So let's assume for purposes of discussion that counsel was ineffective in not talking to them. Our case law says we go through sort of a three-step process here. Was he ineffective in not talking to them? Assume that he was. Was he ineffective in not calling them? And would they probably have made a difference? Yes. And so let's skip to the bottom line. Tell me why they probably would have made a difference in a case where your client had fled. Well, first of all, I submit that there's a reasonable probability that had the trial counsel been prepared, had these witnesses been presented or ready to be presented, he would not have fled. That's not the question. That's not the question. Let's assume he flees. That's not even in the mix. Let's assume he flees. Nonetheless. He fled. He fled.  Go back to my question. Why would it probably have made a difference? Because what the trial amounted to was the defense attorney trying to nitpick about the investigation. Well, the trial was inconsistent here. The 6-year-old was inconsistent there. The divorcing mother was inconsistent here. Well, inconsistencies are normal, especially with young children. Nitpicking against the case was not going to make a difference. And what was going to make a difference was some sort of objective evidence of his innocence. But the objective evidence would have been, two things would have happened. One is those character witnesses, at least, to the extent they testified about his good character, would have been confronted with his prior bad acts, correct? Which came in anyways. Well, but the defense counsel in this case hoped to keep them out. No. He moved to keep them out, so he surely hoped to keep them out. But under 1108 of the Evidence Code of California, those kind of come in anyways. He admitted to sexual contact with the victim in this case. So you put on a character witness. Wouldn't this admission tend to undermine? Because I can't help but think that the prosecutor would have asked the character witness after the character witness said what a good person the defendant was. But would it affect your opinion of the defendant to know that he admitted to participating in a sexual contact with the victim? What he admitted was when the daughter acted childishly, when she was five or six years old or four years old, that she would suckle on his girlfriend's breast as a young baby did, which she also did with her actual mother before they got divorced. CPS investigated this matter. It was inappropriate. He promised not to do it again, but no charges were ever brought. But you do agree that's the kind of question that could be asked of a character witness. Correct. But it's also at best an ambiguous act, and at most it's a innocuous act, in that anything could look suspicious in retrospect. He changed her clothes. He didn't change her clothes. He gave her a bath. He didn't give her a bath. But we have to conclude, moving to the third part of the test, that the California court's determination that this would not probably have affected the outcome, that there's not a reasonable probability that this would affect the outcome, was so unreasonable that no jurist of reasoning could arrive at it. The test is silly, and I can't even articulate it. No fair-minded jurist. Fair-minded jurist. I got the test. But given all that deference, why isn't it – it's certainly not an unreasonable conclusion to think that in a case where your client fled and was not available to testify or present his side of the story, even though he didn't have to, and all the jury heard was the other side of the story, that hearing from some character witnesses about how he couldn't possibly have done this because he's such a nice guy wouldn't have changed the result once they were confronted with his prior misdeeds. This is why it would have made a difference. We had a case that the defense counsel did try to nitpick at. We had a divorce, a bitter custody fight, where the mother was admittedly jealous. Well, not admittedly, but the police officer observed her being jealous. The child seemed to have been forced into making these allegations, in the sense that Mommy said Daddy did this. Mommy said this. Mommy doesn't like him. Mommy thinks this girlfriend's a bad person. There was a lot of reasons to suspect that this was simply an allegation made out of spite, but there was no objective reason. So there was another witness. You said that counsel was ineffective for not doing what California calls a stall report. A stall expert, yes. A stall expert. Yes, from People v. Stall. So assuming he would have obtained one, how would that have made a difference here? Because they don't just say, as you could look at from the declaration in the record, well, I talked to the guy and he doesn't seem like he's the kind of person to do it. They give them a battery of psychological tests. They are aimed to determine whether or not someone has deviance or antisocial personality. He never deviated from that. The people who tend to offend, the people who you would not suspect who end up offending, usually have markers on those tests that are red flags. None of those red flags came out. That's why he was able to stay with confidence, and this is not a person who would do a thing like this. This is a person who understood limits and borderlines and social norms and when told to comply with social norms would do so. So was there any reason given by counsel that why he didn't consider a stall expert? It never occurred to him. That was the reason he gave. Is that in his declaration before the State Court? It is. He did present some expert testimony, as I recall. Correct. On a different issue, though. On a different issue. Yeah, that a 5-year-old is suggestible, which I think most people could figure out on their own. All right. Do you want to save the rest of your time? Yeah, if I could save the rest of my time for everybody, I would appreciate it. Thank you. Good afternoon. May it please the Court, Jill Thayer for Respondent Appelli. So I'll skip the sufficiency of the evidence and any other issues that weren't raised in opening argument. I'll just start with the character witnesses. And as this Court mentioned, that certainly for each character witness, the prosecutor then would have certainly asked. Here's my problem with the character witnesses. It's a problem that a California State Court decision makes for me. The State Court decision says he didn't call them because his client fled. And there was a strategic decision not to call them because it's not. And that may have been a strategic decision not to call them, but how can you justify not talking to them and investigating what they had to say? Prior to trial. Prior to trial. Evidently, he talked with one, and he had planned to have the child psychologist talk about suggestibility. And certainly at the preliminary hearing, he actively questioned Doe and her mother. There was quite a bit. Right. But he never, I think by his own declaration, even talked to the other identified witnesses. That list. There was a list that was given to him. Right. And he admits, I never. And the State Court says, well, he didn't do that because his client fled, and that was a strategic decision. But his client didn't flee until the first day of trial. So post hoc doesn't work on this, does it? Well, there is another piece, which was after the client fled, and he was trying to postpone the trial and say, I won't do this case. And remember, he was going to be held in contempt. And one of his reasons is, gee, now I, number one, I don't have my own client, I don't have his girlfriend, and I don't have any of the other witnesses. I can't get a hold of him, any of them. And certainly he, you know, there was the lack of contact information. Right. Had he investigated earlier and talked to them and found out what their stories were, he would have been prepared at least to make a decision about whether to put them on. But he didn't. I mean, surely it falls below the standard of care not to talk to what your opponent calls at least partially precipient witnesses. Well, it looks like what he did in this case, and this is what ultimately happened, was defense counsel decided reasonably in light of this other allegation, the 1108 evidence, that he would focus on the victim, her credibility, suggestibility, the custody dispute. How does the record fit? Does the record bear out what you just said? I don't think defense counsel said, I decided in light of the 1108 allegation not to talk to these people. He just says, I completely failed to talk to them. He doesn't say that. In fact, he says, I totally messed up. He's falling on the sword in this case, in, you know, the state habeas. He's completely falling on the sword. But this Court doesn't have to accept that. Right. But how can we find that he made a decision not to talk to them in light of the 1108 materials when there's no evidence in the record suggesting that? Because under 2254, this Court needs to look at the reasons that would have supported the state court decision. It seems like a factual kind of you're asking us to make a factual assumption that he actually talked to them. Just that it's reasonable. I mean, the only issue here is, was the state court decision objectively unreasonable? I guess my question is, did the Court of Appeals rely too much in its decision on the fact that Mr. Quintana was not there for trial in making that decision, that his lawyer was making a strategic decision not to bring on these character witnesses? And I think that's the main issue here, at least for me. They seemed to rely on the fact that he probably didn't interview them because he was gone. But as my colleagues have pointed out, he had ample opportunity to talk to them prior to the trial. And he didn't know that his client wasn't going to be there for trial. Presumably. We don't know that he didn't know. And he had fled before. He fled in February and an arrest warrant issued in May, and then I'm not sure exactly when he was arrested, but then ultimately he appeared on the information in October. And he did have money. I mean, immediately when he was confronted by Doe's mother, he sold his half interest in a house that he had made $30,000 to $40,000 on and fled to Mexico. So we do know that. So I'm not willing to say that. Isn't the real response to this, we could assume that maybe there was some ineffectiveness here in not investigating these character witnesses prior to trial, but their responses would have made a difference. Would the result, is it reasonably probable that the result would have been different had he called them? No. There's no prejudice here either. And why not? Because, first of all, you have a number of people who are his relatives and friends. Of course they're going to say nice things about him. That evidence does not necessarily work. And her testimony, Doe's testimony, is it happened in the house, it happened in the car, it happened in places where, you know, there were not people around when these incidents were occurring. And so it's entirely, it does happen where people don't know what's going on behind closed doors. And certainly in this case, there was the breath-sucking incident, which the prosecutor would have been able to mention for every single character witness, well, did you know about this incident? And it is interesting in that incident that Doe and her mother said, and the mother said when it happened with her, dad, petitioner initiated it, told us to do this. Can I ask you a question about that incident? It appears that defense counsel tried to keep that out, away from the jury, and failed, right? Correct. You got to introduce it, you, the State, got to introduce it anyway. Was it clear it would have been introducible anyway, or was that a closed question? Oh, I. Was it up to the judge's discretion? To introduce, yes. Yes, it was. So the defense counsel could have reasonably hoped before trial to have kept that information from the jury, or at least thought there was a shot of keeping that information from the jury in the absence of calling a character witness. Well, this would have been really tough to have kept from the jury because there was also an admission to. So, I mean, it was a lewd act. He could have hoped. But it's a prior, uncharged act. Why is it tough to keep from the jury? Because it's. We're not dealing with the judge's decision to let it to the jury here, but I would think a judge would have ample discretion to keep that from the jury. Well, didn't he admit it? It was admitted, yes. But did the defendant admit it? He admitted to the act. He admitted. But he said it was his daughter's, his daughter initiated it. Well, no, there's no doubt that the act took place. I'm not doubting that the defendant admitted to the act. The question is whether the jury should have heard about the act. And was there a reasonable argument that the jury shouldn't have heard about the act? You know, I didn't look into that. It's prior, uncharged. I mean, see, if I'm the defense counsel in this case, I'm thinking maybe I can keep this act away from the jury. But if I put on a character witness, I can't. Now, it turns out he was unsuccessful in keeping it away from the jury anyway. But I'm sort of speculating through this case. And I just had, I didn't look into that angle. What's your response to the stall? Expert. Expert. Yeah. Well, certainly in this, Broad at v. Cambria says reasonable attorneys can differ on the, on whether or not that would be useful to have a stall expert. And in this case, again. Well, he says he didn't even consider it. He did. Is he not considering a stall expert ineffective assistance, whether or not it causes prejudice? Doesn't that fall below the professional standard of care? The superior court did not believe that declaration. And that was reasonable based on all the other facts in this case, which were, number one, he fled. Then they did the pre. Well, presumably he would have considered, if he was going to even think about a stall expert, he would have done it well before the time the case was set for trial. But then you recall, then he was going to get, then the petitioner said, well, I may get a new attorney. So then he didn't do anything. And then his attorney said, okay, I need funds for a child psychologist to talk about suggestibility, because that was the angle he was going to go for. And he didn't get the money. He didn't get the money until five days before trial on a Thanksgiving weekend. So how much more money is he going to try and get from his client? Well, but here's what's troublesome about the case, and I'm not sure that your opponent can get past the prejudice hurdle. We have a lawyer who essentially does nothing with respect to the stall expert and with respect to these other witnesses. Shows up and says, I'm unprepared for trial. The trial turns entirely on the testimony of a young child, and he gets sentenced to a long-term prison. He may deserve it. But what's disturbing about this case is that the attorney seems to have not done very much getting ready for trial. And he says so. I didn't do it. I wasn't prepared. And so we can find no prejudice in the lack of preparation, but I'm having a hard time saying, well, this was all a reasonable strategic decision by the attorney. Well, the superior court made that factual finding, and that factual finding was not unreasonable. Well, what evidence in the record was from the – we can review a reasoned decision when a factual finding is unreasonable. So tell me what evidence in the record before the superior court made it reasonable for the court to determine that this was a strategic decision. When the counsel himself said, I never even thought about it. The lack of money, the lack of time, the decision to focus on the child psychologist. And this attorney did, I thought, a good job in this case. He's the one who brought out all the evidence about the bitter divorce and the acrimony, and he got the detective to say, well, I probably should have re-interviewed this other person. I mean, he did a strong job, as strong of a job as I can imagine in this case. And he did present an expert. He presented the expert he thought would be the most useful. He decided instead of focusing on my client who might flee and who did, I'm going to focus on this young witness and the mother. And so it wasn't just one witness. It was the mother who also said, he admitted it to me. He said there were two people. There was a child and then there was the mother saying, when I confronted him, he admitted it. Okay. No other questions. Thank you, counsel. A few minutes for rebuttal. The question about the 1108 evidence. The general law is, unless it's sort of, I think it's federal 403, it's evidence code 352 of California, unless it's unduly prejudicial, it's coming in. And this type of evidence comes in all the time. And I think in terms of preparation, no reasonable trial counsel on the defense side would assume that the breast suckling evidence was going to be excluded. You have to be prepared for it. Even if he had to prepare for it, wouldn't the impact of any character testimony have been really diminished by the fact that every character witness who said, this is not the kind of guy who would do this, wouldn't be, would be confronted with a, did you know he is the kind of guy who did this? Yeah, I know he did this, but he knows his boundaries. He was playing with the child. This wasn't the type of thing. But we've got to determine that probably would have, that kind of testimony probably would have changed the result in a case in which your client fled. And the jury knew he'd fled. Right. Which is damning stuff. Well, if you're just going to nitpick at the case, you're not going to win the case. One comment that was made earlier is that the only people who testified in his favor were people who liked him, people who lived with him. But actually what the jury heard was people who lived with him and did not like him, his former homeowner, his wife, to a certain extent his daughter, although she did say how she loved her father. Here are people who did live with him, knows all the good and the bad with him, and would have said, this is a person who knows his boundaries, who would not treat a child, would not violate a child, who loved his daughter, and would not do such a thing. I would trust him with my children. I'm aware of what he did about the cycling thing. Was the jury instructed on flight? I believe it was. And it was instructed that it could take his flight as evidence of consciousness of guilt? Correct. If the instruction was given, I think it was. In the real world. The jury was told. Yeah. Yeah, it was. Right. In the real world, can you ever overcome that? I mean, we're supposed to decide whether there's a reasonable probability of changing it. Yes, you can overcome that. I've seen trials where that's been overcome. Because what the court, as I remember, did tell them is that it needs to judge the case by the evidence in front of them. If you have reasons to doubt the kid and the mother's testimony, that's progress. But if you also have affirmative evidence that the person's not guilty, there's just a reasonable doubt, you have to vote not guilty. And the problem with this case was there was no reason to believe he's innocent. You have reasons maybe to doubt the kid, doubt the mom, but why would she be making this up? Now, if you have evidence, we've lived with the guy, we know him, he would not do this. There was a reasonable probability he would have been found not guilty. Okay. Thank you, counsel. Thank you. We appreciate your arguments this afternoon. And thank you for also traveling down to Stanford for the arguments. Thank you. On that matter, submitted.
judges: Paez, Murguia, Hurwitz